

Jessica M. Baquet
Partner
(516) 393-8292
jbaquet@jaspanllp.com
REPLY TO GARDEN CITY OFFICE

April 10, 2020

**Via ECF**
Hon. Vera M. Scanlon
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

    Re:    <u>Case No. 19-cv-651 (LDH)(VMS)</u>

Dear Judge Scanlon:

    This firm represents plaintiff, Sartorius Stedim North America Inc. in the above-referenced action. I write in opposition to the letter application of defendants, Integra Bioprocessing, Inc. ("Integra") and Roberto Becerril ("Becerril"), to compel plaintiff to utilize defendants' proposed search terms to conduct Phase 3 discovery.

    As Your Honor may recall, defendants became plaintiff's exclusive sales representatives pursuant to a Manufacturer's Representative Agreement dated January 1, 2004 ("2004 Agreement"), which was later superseded by an Amended and Restated Manufacturer's Representative Agreement dated July 1, 2007 ("2007 Agreement"). Both the 2004 and 2007 Agreements provide that: (1) the contract shall automatically renew on the last day of every calendar year unless terminated by one of the parties; (2) either party may terminate the contract without cause on prior written notice; and (3) the contract is governed by the law of New York.

    In July 2018, plaintiff indicated to defendants its intent to renegotiate the 2007 Agreement as part of a corporate realignment. Defendants responded that if plaintiff did so, Puerto Rico's Sales Representative Act of 1990 ("Law 21") would be violated. According to defendants, Law 21: (1) vitiated the 2007 Agreement's New York choice-of-law provision and made Puerto Rico law controlling; (2) invalidated the provisions of the 2007 Agreement that permitted termination without cause, and mandated that Plaintiff could not change or terminate the parties' relationship without "just cause" under Puerto Rico law.

    In February 2019, Plaintiff commenced this action asserting a single claim for a judgment declaring that: (1) the 2007 Agreement's choice-of-law provision is enforceable and that New York law, not Puerto Rico law, governs; and (2) therefore, the 2007 Agreement's termination provisions are valid and enforceable. Defendants answered and asserted three counterclaims for: (1) breach of the 2007 Agreement's provisions regarding payment of commissions; (2) violations of Law 21; and (3) a judgment declaring that Puerto Rico law is controlling.

    During the initial conference in this case, plaintiff took the position that its claim, and

several of defendants' counterclaims, raise pure questions of law that can be disposed of on an immediate motion for summary judgment. Defendants countered that the choice-of-law provision is unenforceable because the parties' contract, entered into 12 years ago, was the product of economic duress, and that Puerto Rican statutes are controlling. Your Honor expressed that this "defense" was not legally viable. *See* ECF Docket No. 25.

In an attempt to allow time for the District Judge to rule on plaintiff's summary judgment motion before discovery on this defense was conducted, Your Honor directed the parties to enter into a staged discovery schedule. The final stage of discovery was to concern defendants' defenses to plaintiff's declaratory judgment claim. *See* ECF Docket No. 41. However, despite plaintiff's efforts to obtain an expedient ruling on its summary judgment motion, the time for Phase 3 discovery has arrived and its summary judgment motion has yet to be decided.

In connection with Phase 3 discovery, defendants proposed search terms one business day before the deadline for the parties to reach agreement. They did so at 4:30 p.m. on the day that Governor Cuomo announced the mandatory and complete shutdown of all non-essential businesses. I am a member of my firm's management committee and was specifically tasked with transitioning our entire firm, which has 100 employees, to remote operations on virtually no notice. Therefore, I immediately notified was unable to respond until March 24th.

Since that time, the parties have been unable to reach agreement on defendants' Phase 3 search terms. However, defendants' allegation that plaintiff "refused to run any of the searches" that defendants proposed is inaccurate. Defendants are aware that plaintiff ran three of their proposed searches, and a modified version of a fourth search as follows:

```
("Integra" or "Becerril") and (threat! or intimidat! or coerc! or forc!)
("Section 8" or "Paragraph 8" or "Section 7" or "Paragraph 7") /20 "New York"
("Section 8" or "Paragraph 8" or "Section 7" or "Paragraph 7") /20 "choice of law"
("Section 8" or "Paragraph 8" or "Section 7" or "Paragraph 7") /20 (dealer or distributor or "sales representative") /5 agreement!)
```

The first search returned thousands of e-mails that counsel is presently in the process of reviewing. The remaining searches did not return any responsive documents.

None of defendants' other search terms have any bearing on their defenses and/or are patently improper. Indeed, many of these search terms are similar to those that plaintiff ran in prior phases of discovery, or has agreed to run now. Defendants want plaintiff to re-run those terms with the overbroad terms ("Bobby" or "Roberto") substituted for ("Becerril" or "Integra"). For example:

| Searches Previously Run by Plaintiff | Searches Requested by Defendants in Phase 3 |
|---|---|
| ("Integra" or "Becerril") and (threat! or intimidat! or coerc! or forc!) | ("Bobby" or "Roberto") and (threat! or intimidat! or coerc! or forc!) |

| Searches Previously Run by Plaintiff | Searches Requested by Defendants in Phase 3 |
|---|---|
| ("Integra" or "Becerril") and ("Puerto Rico" and "New York") /15 law! | ("Bobby" or "Roberto") and "Puerto Rico" and "New York" /15 law! |
| ("Integra" or "Becerril") and ("choice of law" or violat! or impair! or terminat! or "just cause") | ("Bobby" or "Roberto") and ("choice of law" or violat! or impair! or terminat! or "cause") |
| 1. ("Integra" or "Becerril") and (unilat! or unreasonab!)<br>2. (Becerril AND agreement) w/50 (amend* or chang* or revis*)<br>3. (Becerril AND contract) w/50 (amend* or chang* or revis*)<br>4. (Integra AND NOT Integrat* OR "Integra Life Sciences" OR "Integra Companies" OR "Integrated Services Solutions" OR "Integra Neurosciences") AND agreement w/50 (amend* or chang* or revis*)<br>5. (Integra AND NOT Integrat* OR "Integra Life Sciences" OR "Integra Companies" OR "Integrated Services Solutions" OR "Integra Neurosciences") AND contract w/50 (amend* or chang* or revis*) | ("Bobby" or "Roberto") and (modif! or unilat! or unreasonab! or chang!) |

    The searches plaintiff previously ran yielded tens of thousands of documents, which plaintiff's counsel reviewed and from which plaintiff produced more than 12,000 pages. There is no reason to rerun these searches using "Bobby" or "Roberto" in lieu of "Integra" or "Becerril." The undersigned can attest, based on the review of tens of thousands of e-mails, that plaintiff's employees did not refer to Becerril as "Bobby." Further, a search involving the name "Roberto" is not reasonably calculated to lead to relevant evidence. Plaintiff is a subsidiary of an international corporation with tens of thousands of employees worldwide, and a like number of customers across the globe, including in Spanish speaking territories and countries. A search using only the identifier "Roberto" will return documents that have nothing to do with this case.

    It is also worth noting that none of the above terms, other than "("Bobby" or "Roberto") and (threat! or intimidat! or coerc! or forc!)," relate to defendants' economic duress defense or any of their other boilerplate defenses. Rather, they relate to defendants' breach of contract and Law 21 counterclaims, as to which discovery was already completed. This is evidenced by the fact that plaintiff ran virtually identical searches during earlier phases of discovery.

    Some of defendants' other proposed search terms are grossly overbroad. For example, Plaintiff previously ran a search for ("Integra" or "Becerril") and ("just cause") during Phase 2. Defendants now ask plaintiff to run the following search: ("Integra" or "Becerril") and ("cause"). This is preposterous. The parties have a course of dealing that dates back 16 years, and involves hundreds of thousands of e-mails (defendants' initial Phase 1 search terms returned more than

100,000 e-mails). This search will return every e-mail sent or received by defendants which includes the word "cause" in any context. It is patently improper.

Defendants also ask plaintiff to run a search for: ("Integra" or "Bobby" or "Becerril" or "Roberto") and (perform! or staff!). However, whether defendants' performance was poor *after* the parties entered into the 2007 Agreement has nothing to do with whether the 2007 Agreement is enforceable. To the extent defendants allege that they need to determine whether plaintiff's desire to terminate the agreement is really predicated on such matters, they are wrong. The 2007 Agreement permits plaintiff to terminate *without cause*, and that "right is absolute and will be upheld in accordance with its clear and unambiguous terms." *Red Apple Child Dev. Ctr. v. Cmty. Sch. Dists. Two*, 303 A.D.2d 156, 157 (1st Dep't 2003); *Big Apple Car v. City of N.Y.*, 204 A.D.2d 109, 111 (1st Dep't 1994). Therefore, this court cannot "inquire into why a party exercised his right to terminate a contract when the contract is terminable without cause." *Schwartz v. Fortune Magazine*, 89 F. Supp. 2d 429 (S.D.N.Y. 1999).

Finally, Defendants proposed the search terms: (1) (terminat! or cancel! or replac!) /10 (rep! or representative)"; and (2) "(restructur! or business or direct) /10 plan /20 (rep! or representative)." In the application, Defendants do not even attempt to explain why these search terms are relevant to any of their defenses. They clearly are not relevant, as whether plaintiff terminated, cancelled, replaced or restructured its agreements with other representatives is totally irrelevant to whether its agreement with defendants is valid and should be interpreted as plaintiff alleges in its declaratory judgment claim.

Additionally, even if any of these search terms were reasonably related to defendants' affirmative defenses (they are not), it would not matter. Defendants waived each and every defense by failing to assert it in response to plaintiff's motion for summary judgment, which averred that the 2007 Agreement is valid and enforceable, and that plaintiff's interpretation of it must be adopted as a matter of law. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2016); *see also Taylor v. City of New York*, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003).

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motion in its entirety.

Respectfully submitted,
/s/ Jessica M. Baquet
Jessica M. Baquet

cc:   All Counsel of Record (via ECF)